
# UNIVERSITY DISABILITY CONSORTIUM
*Physician Specialists for Disability Evaluation and Management*

August 17, 2005

Dan Connors
Hartford Life
P.O. Box 2999
Hartford, CT 06104-2999

RE:  **Claimant:**   **Colleen Corcoran**
     **SS#:**        **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**

## OBSTETRICS RECORD REVIEW OF COLLEEN CORCORAN

**INTRODUCTION:** I was asked to review the extensive medical records of Colleen Corcoran in regards to the following diagnoses: hyperemesis and sciatica. In summary, this is a 28-year-old female with a history of one previous pregnancy who is currently pregnant with her second pregnancy. This evaluation was requested regarding the claimant's medical condition of hyperemesis and sciatic pain and to address her functional limitations and her ability to work from 7/21/04 through 10/17/04 and beyond. I have been asked to answer the following questions: 1.) "Please define the claimant's functional limitations from 7/21/04 through 10/17/04 and beyond." 2.) "Did Dr. Romano advise the claimant to discontinue treatment until after delivery?" I have been asked to concentrate on the claimant's prenatal records and the records that are pertinent to the specialty that is Obstetrics and Gynecology.

Records available for me to review include the claimant's chiropractic records. Dr. Romano's, records date basically from 9/20/04 through 9/27/04. The claimant received three chiropractic treatments. There are two letters, one dated 11/10/04 and one dated 12/30/04 that pertain to the claimant and the treatment she received with Dr. Romano. The letter from Dr. Romano dated 12/30/04 indicates that the patient discontinued treatment because he felt further treatment would not result in a permanent reduction of her symptoms and therefore would not be beneficial. There is another document that is a narrative letter that lists the dates that the claimant was seen and the amount of time for which she was seen by a massage therapist. This letter is not dated

ADMINISTRATIVE OFFICES • 173 Lincoln Street • Newton Highlands, Massachusetts 02461-1501 • 617.527.1855 • Fax 617.527.2570 • Email UDC@UDC1.com

but indicates that the claimant was seen in 2004 for approximately 15 visits for therapeutic massage. Also included in the chart is the claimant's Obstetrics and Gynecology chart from 2/10/03 through her pregnancy. The chart goes through 3/11/05. Also available for review is an Emergency Room record from the claimant's visit to the Emergency Room dated 11/11/04. There are multiple Family Medical Leave Act applications. There are a total of two of these that were filled out and sent for review. In addition, there are several disability applications. There is a Hartford letter discussing the claimant's evaluation for disability and there is paperwork that pertained to the claimant's psychiatric evaluation and visits. The majority of my review will concentrate on the claimant's prenatal records as requested.

**MEDICAL RECORD REVIEW:** In short, the claimant was first seen for prenatal care on her intake examination on 7/2/04 and at that time a medical history and physical exam were obtained.

She was next seen on 7/24/04 where she complained of severe nausea and vomiting and indicated that the nausea interfered with her work. At this time the claimant weighed 244 lbs and did not exhibit any signs of spilling of ketones in her urine. Her blood pressure was stable at that time as well.

There is a notation that I am assuming is from a telephone conversation indicating that the claimant was having problems at the workplace and wanted a note stating she could not work more than two days a week because of nausea and vomiting. The notation states that she could not be on the phone and therefore could not work. There is also a notation that indicates that the ultrasound was received and showed a marginal placenta previa. Another note indicates that the labs were reviewed. A final note indicates that the claimant was placed on Reglan PO three times a day for nausea and vomiting.

There is a notation that claimant was seen on 8/13/04 where an AFP was obtained.

The claimant was next seen on 8/21/04 where she had increased her weight to 250 lbs. Again, there is no evidence of ketones in her urine. She continued to complain of nausea and vomiting in spite of being on the Reglan. She also began complaining of lower backaches. It was suggested at that time that the claimant get a maternal girdle and she was noted to have some throbbing. There is no indication that the claimant had a physical examination on this visit to indicate the claimant's range of motion or functional ability during this visit.

There was a telephone conversation ten days later discussing some medications. It also indicates the claimant was going on a cruise and asked about Dramamine and Reglan.

She was next seen on 9/17/04 and complained of problems with her sciatic nerve, severe backache. She was still vomiting. Again the claimant had increased her weight by five lbs. She still did not have any ketones in her urine. There were no labs that were drawn to evaluate the severity of her nausea and vomiting. There is a notation that states that the claimant is to see a chiropractor for the problem with her back.

Her next visit on 9/23/04 showed that her weight had remained the same. She denied problems and had no complaints at this particular visit.

She was next seen on 10/7/04 and she again gained weight. She now weighed 260 lbs. Again she had no ketones in her urine. She continued to complain of left hip pain that was bothering her. The pain radiated down her leg and pelvis. Again there is no indication that a physical examination was done at this time. There are notations here stating that the claimant wanted several different doctors to talk to each other concerning her disability. There are several phone calls indicating that the claimant had a severe sinus infection. She was started on amoxicillin.

She was next seen on 11/3/04 and complained of burning in the vaginal area and that both lips hurt. She continued to complain of some left sciatic discomfort. The claimant had maintained her weight. She was now 259 lbs. She had no ketones in her urine.

The claimant was then seen on 11/18/04. She still complained of left sciatic pain that was severe. She complained that she was having intermittent nausea and vomiting. She was using hot compresses. She was stretching and she was getting massage. All this was advised.

On 12/1/04 she was seen again. Her weight had maintained at 259 lbs. She complained of some severe heartburn and pain in the hip that continued.

She was then seen again on 12/10/04. She maintained her weight. She was complaining of left hip pain and during the rest of her prenatal care from 12/15/04 through 1/11/05 and on through 1/19/05 the claimant was complaining on and off of cramping and contractions and noting that the baby was moving.

The claimant finally underwent Cesarean section secondary to failure to progress on 1/22/05. Her follow-up examination on 2/2/05 found the claimant had some complaints. At that visit the claimant's sutures were removed and she was given a return clinic appointment.

The claimant had an incision check on 2/9/05. The claimant at that visit complained of low backache and she was diagnosed with mild postpartum depression and she was given the telephone number for a therapist.

She was seen again on 2/23/05. However, I am unable to read this note.

On 3/10/05 it indicates that the claimant had intercourse that was unprotected and that she wanted to discuss birth control. Her physical examination at that time was found to be within normal limits. She was documented as having a normal postpartum check. A Pap smear was obtained. There was a discussion about birth control options at that time.

In addition to the prenatal medical records, there is an ultrasound report that is dated 7/16/04. At the time the claimant was approximately 14 weeks. It showed the placenta as posterior and a marginal previa.

On 9/17/04 a repeat ultrasound showed that the placenta had migrated superiorly and was now a posterior placenta without any evidence of previa.

There is a written note on a prescription pad dated 7/2/04 that indicates that Ms. Corcoran is under the care of a doctor whose signature I cannot read and has an estimated date of confinement of 1/18/05.

There is a handwritten note that is also dated 9/17/05 that states that the claimant has been out of work for severe sciatica, back pain and vomiting, but due to financial hardships the claimant has requested that she be allowed to return to work for four hours a day. The claimant was given this approval.

There are two narrative letters that give a short summary of the claimant's prenatal course.

The claimant was also seen in the Emergency Room on 11/11/04. At that time she was seen because of severe sciatic pain. Physical examination at that time concluded that the claimant had full range of motion. She was given Demerol and Reglan. At that time she was discharged home on the same day.

There are multiple Family Medical Leave Act applications. The first one dated 8/16/04 indicates that the claimant was pregnant with hyperemesis and severe vomiting. When asked is it necessary for the employee to work only intermittently it indicates yes. It also states the claimant needs to get up and walk around every two hours and has lower back pain. The second Family Medical Leave Act application that is dated 9/20/04 indicates that the medical problems the claimant has include placenta previa, sciatica, severe nausea, vomiting, severe stress, depression, she cannot sit for long periods of time and must walk. It indicates the claimant is incapacitated due to these problems.

Colleen Corcoran - 5

The first disability application that I reviewed is dated 7/2/04 and indicates that the claimant has complications due to pregnancy and that she was first treated for the disability on 5/24/04 and can return to work on 7/6/04. The second disability application is dated 8/16/04 and indicates that the claimant may return to work on 8/16/04 and needs to walk around every two hours for approximately a half an hour. Another disability form dated 8/16/04 indicates that the claimant will be able to return to work on 8/16/04. Another disability application dated 9/17/04 indicates that the claimant will be able to go back to work on 9/20/04 and then finally a disability application dated 10/24/04 indicates that the claimant first became unable to work on 7/29/04. I do not see where it indicates that the claimant would be allowed to go back to work.

On 12/10/04 there is what appears to be a New York State Department of Labor form that indicates that the claimant is unable to sit or answer phones at times when vomiting is severe and she is unable to sit for extended periods of time due to left sciatic pain. She was advised not to return to full duty as of 8/16/04. She did not have full medical clearance to return to work on 11/11/04 and this is dated 12/10/04.

The last disability application is dated 2/7/05 and indicates that the claimant was able to go back to work on 3/19/05 after her Cesarean section.

**DISCUSSION:** After review of the medical literature, it appears as if the claimant's symptoms and treatment have a confusing pattern. It appears that the claimant had some complaints of nausea and vomiting. However, these complaints were never worked up from a laboratory standpoint. There is no evidence the claimant had any dehydration. She was started on Reglan but she did not have any times during the pregnancy where she was losing weight. She actually gained weight throughout most of the pregnancy. She never had evidence of ketones in her urine, which is an indication of dehydration, nausea and vomiting. There is no documentation on specifically how many times a day the patient was having vomiting or what she was and was not able to hold down. There is no indication as to whether or not the Reglan was helping, and whether or not the medication was increased. There is no indication that the medication was not working enough that a second medication could be tried that might work better. Apparently the

Colleen Corcoran - 6

claimant was feeling well enough to go on a cruise. Also, the doctors did not feel that her symptoms were severe enough to put her on any dietary restrictions or to admit her to the hospital. She was just given medications.

Therefore, from the standpoint of having severe nausea and vomiting, I do not feel that the claimant was ever disabled enough to be off of work.

To address the claimant's back pain and sciatic pain, there is documentation that the claimant had a history of a motor vehicle accident. However, there is no documentation that the claimant's OB/GYN ever did a physical examination that indicates the extent of the claimant's function or non-function in regards to her back pain. The claimant was advised to obtain a natal support. She was also advised to get hot warm compresses as well as massage her back. She was referred to a chiropractor and she was also referred to a massage therapist. However, in the midst of her treatments with the chiropractor it is documented that the claimant requested to go back to work. This puts the question of the severity of the claimant's symptoms to begin with. There is a note from her chiropractor, Dr Romano, indicating that he felt her treatment with him would not result in permanent reduction of her symptoms and thus would no longer be beneficial. Typically, chiropractic treatment during pregnancy is used to provide relief from symptoms at least until after the pregnancy has ended. It is common understanding that back pain in pregnant women typically worsens as the pregnancy progresses and her weight increases. I am unclear as to why Dr. Romano felt that a permanent reduction in the patient's symptoms would be achieved as long as the patient was pregnant. It is unclear if the patient was getting temporary relief from her symptoms with chiropractic treatment. As stated previously in this review, the patient actually asked to return to work on a limited basis due to financial reasons. Dr. Romano's letter indicates that treatment was stopped due to a lack of possibility of permanent reduction of symptoms.

Therefore, after review of all the records from the time period from 7/21/04 through 10/17/04, it appears that the claimant should have the capacity to work. There is no indication, as stated previously, that she is incapacitated enough to not go on a cruise and, to request actually going back to work, in spite of her subjective symptoms.

Colleen Corcoran - 7

After 10/17/04, it appears that the claimant had a severe enough incidence of pain on 11/11/04 to send her to the Emergency Room, but the medical record after this Emergency Room visit does not appear to contain as many complaints about the claimant's back pain as previous records do. The claimant did undergo a Cesarean section (1/22/05) and typically patients are taken off of work at approximately 36 weeks until anywhere from six to eight weeks after delivery of the baby.

Therefore, based on the available medical records, documentation does not support impairment for disability during the time stated and disability should follow that of a normal pregnancy. Typically the state will allow disability beginning at 36 weeks to end eight weeks after the delivery via Cesarean section.

There were several attempts that were made to contact the claimant's OB/GYN, three attempts in all. However, I did not get any response from the claimant's treating doctor.

*Signature*

Shereen Beverly, M.D., F.A.C.O.G.
Obstetrics and Gynecology
(Corcoran, C2)a